UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| **ANTONIO LYNN FLUKER, JR.,** Plaintiff, vs. **BRYAN DUNN, et al.,** Defendants. | **2:23-CV-10617-TGB-PTM** HON. TERRENCE G. BERG **OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION** **(ECF NO. 59)** |

Antonio Lynn Fluker, Jr. is a prisoner at the Federal Corrections Institution-Schuylkill in Minersville, Pennsylvania serving a sentence for wire fraud and money laundering. See Case 4:21-cr-20331-FKB-CI, ECF No. 157, PageID.964 (Judgment in a Criminal Case). In 2023, Fluker filed a lawsuit against seventeen officers and administrators of the Clare County Jail ("Defendants;" "the Jail") claiming they violated his constitutional rights during his pretrial detention there. ECF No. 4, PageID.21-23; ECF No. 49, PageID.485-86, PageID.488, PageID.493. On September 12, 2023, this Court referred Fluker's lawsuit to United States Magistrate Judge Patricia T. Morris for all pretrial proceedings, including a potential report and recommendation on dispositive matters, pursuant to 28 U.S.C. § 636(b)(1)(B). ECF No. 12, PageID.60.

On March 15, 2024, Defendants filed a Motion for Sanctions. ECF No. 31. On March 29, 2024, Defendants filed a Motion for Summary

1

Judgment. ECF No. 34. Fluker responded to these motions. ECF No. 36; ECF No. 49. On October 24, 2024, Defendants filed a Motion to Strike a Sur-Reply filed by Fluker. ECF No. 58.

On November 5, 2024, Magistrate Judge Morris issued a Report and Recommendation. ECF No. 59. Judge Morris recommended that the court grant Defendants' Motion for Summary Judgment, deny Defendants' Motion for Sanctions, deny as moot Defendants' Motion to Strike, and dismiss the matter in its entirety. ECF No. 59, PageID.651. Fluker filed Objections to Judge Morris' Recommendations on December 3, 2024 (with his filing bearing a date of November 19, 2024). ECF No. 61, PageID.695. Defendants filed a Response to Fluker's Objections on December 17, 2024. ECF No. 63, PageID.699

For the following reasons, the Report and Recommendation of the Magistrate Judge will be **ACCEPTED**, Fluker's objections will be **OVERRULED**, and judgment will enter in favor of Defendants.

## I. BACKGROUND

Fluker alleges that the Defendants violated his rights under the Eighth Amendment by failing to provide him opportunities to exercise. Because Fluker was a pretrial detainee, his claims are evaluated under the Fourteenth Amendment, which is coextensive with the Eighth Amendment for cruel and unusual punishment purposes. *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 243-44 (1983). Fluker also alleges that Defendants violated Fluker's First Amendment rights

by denying him access to books that his wife shipped to the jail. ECF No. 59, PageID.659.

### A.   Access to Books

When Fluker arrived at the Jail, it had a policy which banned all book shipments to prevent the entry of contraband. ECF No. 59, PageID.652. Fluker's spouse ordered three books to be sent to Fluker from Amazon. *Id.* at PageID.653. The Jail rejected those shipments. *Id.* The Jail eventually altered its book policy to allow books to be shipped directly from publishers and vendors. *Id.* Fluker was eventually transferred from the Jail to FCI Milan. ECF No. 34, PageID.312.

### B.   Access to Exercise

Fluker lived in Cell Three of the Jail from July 19, 2022, to November 8, 2022. ECF No. 34, PageID.311. "Cell Three was a communal cell in which inmates would eat and sleep." ECF No. 59, PageID.653-54. Cell Three was intended to house ten inmates, but for about twenty-nine days of Fluker's time there it held twelve, including Fluker. *Id.* at PageID.654. Cell Three's population fluctuated between seven and ten inmates for the rest of Fluker's stay. *Id.*

Fluker asserts that during his 112 days in Cell Three, Defendants never allowed him to exercise outdoors or in the Jail's exercise room. ECF No. 61, PageID.692. Defendants disagree. They assert that Fluker was allowed outdoor exercise once during that time. ECF No. 34, PageID.313.

3

Fluker also asserted that Cell Three was "extremely hot which made it feel like it was above 90 degrees. It was virtually impossible and even dangerous to exercise in Cell [Three] due to the extreme heat and lack of space." ECF No. 49, PageID.501. Fluker asserts that "poor ventilation" caused the heat. ECF No. 61, PageID.692. Fluker states that "[over] his nine months at the Jail, [he] gained forty-five pounds. [Fluker] also claims to have developed hypertension, shortness of breath, and high cholesterol." ECF No. 59, PageID.655.

Judge Morris found that photographs of Cell Three showed "that Fluker had enough floor space to perform basic calisthenics such as push-ups, sit-ups, jumping-jacks, or burpees." *Id.* at PageID.664. Cell Three also had a television, a window, and other inmates living there. *Id.* at PageID.666.

During Fluker's time in Cell Three, daily high temperatures in Oil City, Michigan, where the nearest reporting weather station is located, reached 85 degrees Fahrenheit eight times, and reached 80 degrees Fahrenheit twenty-six times. *See attached exhibits*, NAT'L WEATHER SERV., NOAA Online Weather Data, OIL CITY 2S (last visited January 21, 2025), https://www.weather.gov/wrh/climate?wfo=dtx.

## II. STANDARD

Either party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1). Objections must cite

the specific portion of the report and recommendation to which they pertain.

"The District Court need only review the Magistrate Judge's factual or legal conclusions that are specifically objected to by either party." *Ghaster v. City of Rocky River*, 913 F. Supp. 2d 443, 452 (N.D. Ohio 2012) (*quoting Thomas v. Arn*, 474 U.S. 140, 150 (1985)). Failure to object waives further review of a district court's adoption of the report and recommendation. *Pfahler v. Nat'l Latex Prods. Co.*, 517 F.3d 816, 829 (6th Cir. 2007). "[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) And the filing of vague, general, or conclusory objections is insufficient to preserve issues for further review. *Cole v. Yukins*, 7 Fed. App'x 354, 356 (6th Cir. 2001).

This Court must review de novo (as if it were considering the issues for the first time) the parts of a report and recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge ... or receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

## III. FINDINGS; WAIVED ISSUES

Judge Morris recommended that the Court grant Defendants' Motion for Summary Judgment on Fluker's First Amendment and Fourteenth Amendment claims. Fluker filed objections to several of Judge Morris' factual and legal findings. ECF No. 61. Defendants did not file any objections, but responded to Fluker's objections. ECF No. 63. Therefore, Defendants have waived their right to any review of Judge Morris' recommendation for the Court to deny of Defendants' Motion for Sanctions. ECF No. 31. Additionally, Defendants have waived any objection to Judge Morris's recommendation for the Court to deny Defendants' Motion to Strike, ECF No. 58, as moot, pending resolution of Defendants' Motion for Summary Judgment, ECF No. 34. Accordingly, the Court **ACCEPTS** and **ADOPTS** Judge Morris' Report and Recommendation as it relates to ECF No. 31 and ECF No. 34.

## IV. FLUKER'S OBJECTIONS

### A.    Fluker's First Amendment "Objection" is Vague and Waived

Judge Morris recommended that the Court grant summary judgment to Defendants on Fluker's First Amendment claim for denial of access to books. ECF No. 59, PageID.677.

In response, Fluker wrote:

> Magistrate [Judge] Morris misapplies substantive law relating to defendants['] no-book policy. It is hardly credible for defendants to complain of conduct to which they have now implemented.

6

> Defendants have instituted a publisher only policy and all books must be ordered by a member of the public and shipped directly from a publisher or online vendor such as Amazon.

ECF No. 61, PageID.694.

This "objection," quoted above in its entirety, fails to specify the errors of law or fact that exist in Judge Morris' recommendation. Consequently, it is not an objection to which this Court need respond. *See Miller*, 50 F.3d at 380; *Ghaster*, 913 F. Supp. 2d at 452. Judge Morris gave careful consideration to Fluker's First Amendment argument, engaged in a detailed analysis of the pertinent precedent governing the law, and reached a conclusion that this Court finds to be correct. Accordingly, the Court **ACCEPTS** and **ADOPTS** Judge Morris' recommendation that Defendants receive judgment as a matter of law on that claim.

### B. Judge Morris Correctly Applied the Law In Granting Summary Judgment on Fluker's Fourteenth Amendment Claim

Judge Morris found that Defendants were entitled to summary judgment on Fluker's claim that a lack of exercise while in the Jail violated the Fourteenth Amendment. ECF No. 59, PageID.667. Judge Morris correctly applied the law governing a claim of denial of exercise under the Fourteenth Amendment: only deprivations of necessities of civilized human existence are sufficient to state such a claim. *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004).

7

### i.     Standards for Exercise Denial Being Cruel and Unusual Punishment

"[A] total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees. Inmates require regular exercise to maintain reasonably good physical and psychological health." *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983).

Relevant factors in determining whether the right against cruel and unusual punishment is violated in the context of exercise-restrictions include: "the size of the cell, opportunity for contact with other inmates, time per day expended outside the cell, justifications for denial of the right to exercise, physical or psychological injuries resulting from a lack of exercise or a particularized need for exercise." *Id.*

However, prisoner and detainee "minimum exercise times need only comport with the minimal civilized measure of life's necessities." *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995) (*quoting Walker v. Mintzes*, 771 F.2d 920 (6th Cir. 1985)). And the Sixth Circuit "has never set a minimum amount of time a prisoner must have access to outdoor recreation." *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (*citing Rodgers*, 43 F.3d at 1086-87).

### ii.    Judge Morris' Application of the Law

Judge Morris found that because Fluker had enough space in his Cell Three to "perform calisthenics," because Fluker had access to a

window and a television, and because he was celled with other inmates, no reasonable jury could find that Fluker's lack of exercise violated the Fourteenth Amendment. ECF No. 59, PageID.664-67; *see Patterson*, 717 F.2d at 289. Judge Morris pointed to photographic evidence of the space available in Cell Three, which actually shows people performing calisthenics there. ECF No. 59, PageID.664 (*citing* ECF No. 34-3, PageID.400). Judge Morris found:

> [The] evidence provided by Fluker does not establish that his confinement was so restrictive that a typical juror, with no expertise in psychology, could determine whether his housing conditions violated contemporary standards of decency. . . . To be sure, Fluker's housing conditions were uncomfortable. But the Constitution guarantees only humane living conditions.

ECF No. 59, PageID.667.

### iii.    Fluker's Objections

Fluker makes several objections to Judge Morris' Recommendation to grant Defendants summary judgment on Fluker's Fourteenth Amendment claim, which the Court construes as follows: (1) the denial of outdoor recreation was cruel and unusual punishment; (2) Cell Three was so crowded that Fluker could not exercise there, resulting in cruel and unusual punishment; and (3) Cell Three was so hot that Fluker could not exercise there, resulting in cruel and unusual punishment. ECF No. 61.

9

Fluker limits his objections to Judge Morris' consideration of Fluker's time in Cell Three, the 112 days between July 19 and November 8, 2022. ECF No. 61, PageID.691-92. Fluker argues that because during his 112 consecutive days in Cell Three, he "was not afforded any out of cell exercise and was not allowed outside for fresh air at all," that Judge Morris misapplied the law. *Id.*

### 1.    There is no *Per Se* Right to Outdoor Recreation

For this objection, the question that the Court must answer on a motion for summary judgment is: could a reasonable jury find that Fluker's being deprived of outdoor recreation for 112 days, or only being allowed outdoor recreation once, violated his right against cruel and unusual punishment under the Fourteenth and Eighth Amendments? The Court finds that the answer is no. Whether Fluker suffered cruel and unusual punishment depends on the analysis of several factors. A lack of outdoor exercise is not dispositive.

While courts note the importance of outdoor exercise, the Sixth Circuit "has never set a minimum amount of time a prisoner must have access to outdoor recreation." *Argue*, 80 F. App'x at 430. Rather, jails and prisons must allow their inmates to exercise to an extent that "comport[s] with the minimal civilized measure of life's necessities." *Rodgers*, 43 F.3d at 1086.

Other courts also treat the outdoor nature exercise of exercise as *a* factor in their access-to-exercise analysis, but it is not dispositive.  The

Ninth Circuit has held that its caselaw, including *Spain v. Procunier*, 600 F.2d 189 (9th Cir. 1979), which Fluker cites, ECF No. 49, PageID.488, does not "suggest that indoor recreational opportunities could never satisfy constitutional standards." *Norbert v. City & Cnty. of San Francisco*, 10 F.4th 918, 929-30 (9th Cir. 2021). Rather, "the constitutionality of conditions for inmate exercise must be evaluated based on the full extent of the available recreational opportunities." *Id.* at 930.

Similarly, in *Smith v. Dart*, 803 F.3d 304, 313 (7th Cir. 2015), the Seventh Circuit upheld a district court finding that for cruel or unusual punishment questions, "there is a significant difference between a lack of outdoor recreation and an ability to exercise." The Seventh Circuit found that where an inmate had not alleged "that his movements [were] restricted to the point that he [was] unable to exercise inside his cell or in jail common areas," his lack of outdoor exercise was not a sufficiently serious constitutional deprivation. *Id.*

And in *Wilkerson v. Maggio*, 703 F.2d 909, 912 (5th Cir. 1983), the Fifth Circuit found that a prison inmate had not suffered cruel and unusual punishment through a denial of outdoor exercise, when he was allowed to exercise outside of his cell for an hour a day. The court concluded that "the one hour a day of exercise provided on the *indoor* tier satisfied the constitutional minimum . . . ." *Id.* (emphasis added).

11

In light of this persuasive out-of-circuit and in-circuit precedent, no reasonable jury could find from the available evidence that the Jail's failure to let Fluker exercise outside could amount to cruel and unusual punishment in and of itself. To make such a showing, the evidence must raise an issue of fact that, considering the totality of the circumstances, there was a "total or near-total deprivation of exercise or recreational opportunity." *Patterson*, 717 F.2d at 289. Courts do not find that proof of a lack of outdoor exercise alone is sufficient to show such deprivation. Fluker's first objection, that the lack of outdoor exercise subjected him to cruel and unusual punishment must therefore fail.

### 2.   Fluker Had Enough Opportunity to Exercise in his Cell

For this objection, the question that the Court must answer to decide whether Defendants are entitled to summary judgment is: could a reasonable jury, considering all the evidence concerning Fluker's incarceration in Cell Three, find that he was denied exercise to such an extent that the deprivation constituted cruel and unusual punishment? This Court determines that the answer is no.

As the Sixth Circuit explained in *Patterson*, the question of whether an inmate has suffered cruel and unusual punishment due to a lack of physical exercise depends on factors like "the size of the cell, opportunity for contact with other inmates, time per day expended outside the cell, justifications for denial of the right to exercise, physical or psychological injuries resulting from a lack of exercise or a particularized need for

exercise." 717 F.2d at 289. The inmate's opportunities to exercise need only "compor[t] with the minimal civilized measure of life's necessities." *Rodgers*, 43 F.3d at 1086.

Here, Judge Morris correctly applied the law in concluding that no reasonable jury could find that Fluker was subject to cruel and unusual punishment. She noted the amount of space that Fluker had in his cell to exercise and the opportunities that he had for contact with other inmates in the community cell. ECF No. 59, PageID.664-67.

> [N]o reasonable juror could find that Fluker lacked adequate floor space to perform calisthenics. Unless nearly all of his cellmates were standing simultaneously—leaving most of the cell's beds and seating unused— Fluker still had ample floor space to perform calisthenics. . . . And if the cell was [truly] as cramped as Fluker claims, he does not explain why he could not have asked his fellow inmates for room to exercise, why he could not have used furniture to perform exercises such as tricep dips and incline push-ups . . . .

*Id.* at PageID.665.

Judge Morris also reviewed photographs of Cell Three which showed that there was enough room for inmates to exercise, as evidenced by the inmate performing push-ups. *Id.* at PageID.664.

13



ECF No. 34-3, PageID.400.

In light of these facts, even though Fluker had not been allowed the opportunity for outdoor exercise, no reasonable jury could have found that he suffered *cruel and unusual punishment* through a lack of exercise, because his cell was large enough for him to exercise indoors. The question is whether the jail officials provided the inmate with "meaningful recreation," *Norbert*, 10 F.4th at 932, such that there is no "total or near-total deprivation of exercise or recreational opportunity." *Patterson*, 717 F.2d at 289.

Fluker objects, arguing that Cello Three was too crowded for him to exercise. ECF No. 61, PageID.692-93 ("the room [was] very busy and dangerous [so] it was impractical for plaintiff to exercise within the cell."). But as Judge Morris wrote, Fluker could have simply asked for some space to exercise, as the inmate pictured above may have done. Additionally, Fluker does not explain why he could not find moments throughout the day in which the room was not crowded. From this record,

a jury could reasonably infer that there were times of the day, early in the morning for example, when the cell would have had less activity, and room to exercise would be available. Fluker has not created a genuine dispute of material fact on his opportunity to exercise in Cell Three.

Additionally, as Judge Morris correctly noted, the Supreme Court has approved celling situations where inmates received less space than Fluker did when he was in Cell Three. ECF No. 59, PageID.659 (noting that "Fluker's cell provided forty-three and a half square feet per inmate at its most crowded," and that the Supreme Court found that cells with thirty-one and a half square feet per inmate were not unconstitutionally crowded. *Rhodes v. Chapman*, 452 U.S. 337, 343, 348-49 (1981)).

While *Patterson* also listed "time per day expended outside the cell, justifications for denial of the right to exercise, physical or psychological injuries resulting from a lack of exercise or a particularized need for exercise," 717 F.2d at 289, consideration of these factors did not change Judge Morris' analysis, nor that of this Court.

There is a dispute of fact over whether Fluker was taken out of Cell Three during his 112 days spent there. ECF No. 32, PageID.311-13 (Defendants alleging that Fluker was taken out of Cell Three dozens of times); ECF No. 49, PageID.489 (Fluker asserting that "[during] Cell 03 changeouts plaintiff nor his cellmates were never removed from the cell . . . plaintiff was not afforded out of cell exercise at all for over 112 days . . . .").

15

But because Fluker could have exercised in his cell, even if the jury were to accept his version of the facts, being prevented from leaving the cell did not prevent him from exercising. If there had not been room for in-cell exercise, a jury could reasonably find for Fluker. *See Smith*, 803 F.3d at 313 (finding that where an inmate's movements were not "restricted to the point that he [was] unable to exercise inside his cell or in jail common areas," his lack of outdoor exercise was not a sufficiently serious constitutional deprivation). But because there is no genuine issue of fact as to the availability of room to exercise in Cell Three, no reasonable jury could find that Fluker was denied "the minimal civilized measure of life's necessities." *Rodgers*, 43 F.3d at 1086. He could not have suffered a cruel and usual denial of an opportunity to exercise when the size and nature of his cell gave him the opportunity to exercise.

While *Patterson* noted that an inmate's physical or psychological injuries could affect whether a denial of outdoor exercise could be cruel and unusual punishment, 717 F.2d at 289, Judge Morris did not application of this factor persuasive. Judge Morris noted that while "Fluker claims to have gained weight and developed both hypertension and high cholesterol, assuming exercise would have curtailed development of these symptoms, he could have avoided those consequences by taking advantage of his opportunities for exercise." ECF No. 59, PageID.665-66, *citing Patterson*, 717 F.2d at 289. Judge Morris correctly applied the law: because there has been no evidence adduced

16

that outdoor exercise would have alleviated Fluker's injuries any better than the exercise he could have had indoors, that *Patterson* factor does not create a genuine dispute of material fact for Fluker.

Fluker also contends that Judge Morris also should have considered the declarations he submitted from other inmates at the Clare County Jail stating that they were also denied out of cell exercise. ECF No. 61, PageID.694. Fluker presents no evidence that Judge Morris did not consider those declarations. But the Court has reviewed the declarations, and they do not change the analysis. None of them states that in-cell exercise was impossible or difficult. *See* ECF No. 49, PageID.503 (Drain Decl.), PageID.504 (Broadnax Decl.), PageID.505 (Douglas Decl.), PageID.506 (Parler Decl.), PageID.507 (Jordan Decl.), PageID.508 (Hunter Decl.).

Fluker further argues that the photographs that Judge Morris relied upon do "not depict an accurate portrayal of the conditions within Cell 03, as it only shows a few inmates and the inmates performing exercises were likely staged by the defendant to mislead the court in concluding that [there] was adequate space in order to exercise." ECF No. 61, PageID.694. The Court disagrees. The photograph shows seven inmates, along with enough beds for ten people, and a table at which people could sit. *See* ECF No. 34-3, PageID.400. When Fluker was in Cell Three, there were at most eleven other inmates there, and when there were twelve total people in the cell the jail brought in additional beds.

ECF No. 59, PageID.654. From this Court's review of the photographic evidence, there would have been enough space for Fluker to consistently exercise inside the space that cell provided.

The record is not in conflict on the issue of whether Fluker had meaningful opportunities to exercise in Cell Three during his 112 days there. As a result, no reasonable jury could find that he was denied exercise such that he suffered cruel and unusual punishment. While Fluker's desire for outdoor recreation was reasonable, understandable, and perhaps should have been granted. But its denial was not cruel and unusual punishment. Fluker's second objection is overruled.

### 3.   The Heat in Cell Three Did Not Prevent Exercise

Fluker objects to Judge Morris' Report and Recommendation on the grounds that Cell Three was so hot that he could not exercise there. "Cell 03 temperature felt as if it was above ninety degrees within the cell due to poor ventilation . . . in light of . . . extreme temperatures in Cell 03 . . . it was impractical for plaintiff to exercise within the cell." ECF No. 61, PageID.693. This Court must overrule Fluker's objection.

### a)   Fluker has not Provided Enough Evidence

When evaluating a motion for summary judgment, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Fluker has only submitted a scintilla of evidence about the temperatures in Cell Three. He has not provided any testimony about how hot his cell was, or when it was hot, or why it was too hot for him to exercise in his cell. He has not provided evidence about any cooling or ventilation system in Cell Three, or its lack of such systems. He has not even provided testimony about how hot Cell Three actually was, but only says that Cell Three "felt" as if it were hotter than ninety degrees. ECF No. 61, PageID.693. He submitted declarations from other inmates which corroborate his allegations about being denied outdoor recreation and access to books, but none of those declarations mention the temperature in Cell Three. ECF No. 49, PageID.503-08. Nor do Fluker's jail grievances. ECF No. 49, PageID.553; ECF No. 18, PageID.134 (exercise grievances); ECF No. 34-1, PageID.332 (book grievance).

Fluker has had the opportunity to collect more evidence about the temperature conditions in Cell Three via discovery, but either has not done so or has not presented it. *See* ECF No. 18, PageID.111-40 (Fluker's interrogatories and document requests, which do not mention cell temperature); ECF No. 17, PageID.95-98 (more of Fluker's interrogatories, which do not mention cell temperature).

Any of the above examples of evidence could have created a genuine dispute of material fact. But the only evidence Fluker has provided is his bare statement that it felt as though it was more than ninety degrees in his cell, and that it was dangerous for him to exercise there. Because

19

cruel and unusual punishment involves deprivations of necessities of civilized human existence, Fluker needed to provide evidence from which a jury could have concluded that he actually suffered such deprivations. *See Hadix*, 367 F.3d at 525. He has not done so.

### b)   The Described Temperatures do not Amount to Cruel and Unusual Punishment

"[T]here is a clearly established right to be free from exposure to extreme temperatures by prison officials." *Burley v. Miller*, 241 F. Supp. 3d 828, 837 (E.D. Mich. 2017). Moreover, conditions of confinement which would not be enough to establish cruel and unusual punishment on their own, but which produce the deprivation of a human need like exercise, establish cruel and unusual punishment. *Burley*, 241 F. Supp. 3d at 836 (*quoting Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). So it is conceivable that an inmate could be subjected to cruel and unusual punishment by exposure to temperatures that were high enough to prevent inmates from exercising, even where exposure to the temperature alone would not produce cruel and unusual punishment.

The temperatures that Fluker vaguely describes as prevailing in Cell Three were not so severe. In *Chandler v. Crosby*, 379 F.3d 1278, 1297 (11th Cir. 2004), the Eleventh Circuit found that inmates were not subjected to cruel and unusual punishment by high temperatures, in part because "the temperatures and ventilation . . . during the summer months are almost always consistent with reasonable levels and comfort

20

and slight discomfort which are to be expected in a residential setting in Florida in a building that is not air-conditioned."

Here, the temperatures that Fluker reported in Cell Three—"[it] felt as if it was above ninety degrees"—was consistent with the levels of discomfort which would have been expected in a non-air conditioned residential setting in Harrison, Michigan, where the Clare County Jail is located. While Fluker was in Cell Three, reported temperatures reached the high eighties several times at a nearby weather station. NAT'L WEATHER SERV., NOAA Online Weather Data, OIL CITY 2S (last visited January 21, 2025), https://www.weather.gov/wrh/climate?wfo=dtx. When the temperature reached 89 degrees Fahrenheit on Fluker's second day in Cell Three, it may well have "felt as if it was above ninety degrees within the cell." ." ECF No. 61, PageID.693. But that would have been the same experience for someone living outside Fluker's jail in a non-air conditioned residence. Since those conditions are considered tolerably uncomfortable for Michiganders outside of jails and prisons, such temperatures that feel very hot during the summer do not deprive inmates of the necessities of civilized existence. *See Hadix*, 367 F.3d at 525.

Truly severe temperature or environmental conditions are unbearable enough to create a genuine dispute of material fact. *See Burley*, 241 F. Supp. 3d at 836-39 (inmate being forced to stand in freezing rain for ten to twelve minutes, and then being forced to remain

in his saturated clothes for another two hours, potentially showed the violation of a clearly established right under the Eighth Amendment); *citing Hope v. Pelzer*, 536 U.S. 730, 734 (2002) (inmate being chained, shirtless to a post in the sun for seven hours, such that he was sunburned, potentially showed a violation of the Eighth Amendment).

If Fluker had presented evidence that his conditions truly were shocking, as they were in those cases, such facts would have created a credibility contest with Defendants' version sufficient to survive summary judgment. But here, even if the jury were to accept Fluker's testimony regarding the temperature conditions, it would not create a genuine dispute of material fact on the question of cruel and unusual punishment.

Fluker's lack of specific evidence presented about the temperature in Cell Three, and the lack of sufficient severity in the information he did provide, means that no reasonable jury could find that the temperature in Cell Three prevented him from exercising. Therefore, Fluker's final objection is overruled, and Judge Morris' Recommendation that Defendants receive Summary Judgment on Fluker's Fourteenth Amendment claim is granted.

## V. CONCLUSION

Accordingly, it is hereby **ORDERED** that Judge Morris's November 5, 2024 (ECF No. 59) is **ACCEPTED** and **ADOPTED**. It is

**FURTHER ORDERED** that the case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated: February 4, 2025          /s/Terrence G. Berg
_____

HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Firefox                                                                                       https://nowdata.rcc-acis.org/dtx/

### Climatological Data for OIL CITY 2S, MI - July 2022
Click column heading to sort ascending, click again to sort descending.

| Date | Temperature | | | | HDD | CDD | Precipitation | New Snow | Snow Depth |
| | Maximum | Minimum | Average | Departure | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 2022-07-01 | M | M | M | M | M | M | M | 0.0 | 0 |
| 2022-07-02 | M | 50 | M | M | M | M | 0.20A | 0.0 | 0 |
| 2022-07-03 | 82 | 51 | 66.5 | -1.1 | 0 | 2 | 0.00 | 0.0 | 0 |
| 2022-07-04 | 84 | 57 | 70.5 | 2.7 | 0 | 6 | 0.00 | 0.0 | 0 |
| 2022-07-05 | 85 | 66 | 75.5 | 7.6 | 0 | 11 | 0.09 | 0.0 | 0 |
| 2022-07-06 | 87 | 65 | 76.0 | 7.9 | 0 | 11 | 0.00 | 0.0 | 0 |
| 2022-07-07 | 74 | 55 | 64.5 | -3.7 | 0 | 0 | 0.00 | 0.0 | 0 |
| 2022-07-08 | 81 | 61 | 71.0 | 2.7 | 0 | 6 | 0.00 | 0.0 | 0 |
| 2022-07-09 | 75 | 47 | 61.0 | -7.4 | 4 | 0 | 0.00 | 0.0 | 0 |
| 2022-07-10 | 77 | 42 | 59.5 | -9.1 | 5 | 0 | 0.00 | 0.0 | 0 |
| 2022-07-11 | 82 | 54 | 68.0 | -0.7 | 0 | 3 | 0.00 | 0.0 | 0 |
| 2022-07-12 | 78 | 60 | 69.0 | 0.2 | 0 | 4 | 0.18 | 0.0 | 0 |
| 2022-07-13 | 78 | 54 | 66.0 | -2.9 | 0 | 1 | 1.13 | 0.0 | 0 |
| 2022-07-14 | 75 | 52 | 63.5 | -5.4 | 1 | 0 | 0.46 | 0.0 | 0 |
| 2022-07-15 | 78 | 51 | 64.5 | -4.5 | 0 | 0 | 0.00 | 0.0 | 0 |
| 2022-07-16 | 79 | 61 | 70.0 | 0.9 | 0 | 5 | 0.15 | 0.0 | 0 |
| 2022-07-17 | 77 | 61 | 69.0 | -0.1 | 0 | 4 | 0.00 | 0.0 | 0 |
| 2022-07-18 | 80 | 58 | 69.0 | -0.2 | 0 | 4 | 0.00 | 0.0 | 0 |
| 2022-07-19 | 86 | 60 | 73.0 | 3.8 | 0 | 8 | 0.00 | 0.0 | 0 |
| 2022-07-20 | 89 | 68 | 78.5 | 9.2 | 0 | 14 | 0.00 | 0.0 | 0 |
| 2022-07-21 | 85 | 66 | 75.5 | 6.2 | 0 | 11 | 0.04 | 0.0 | 0 |
| 2022-07-22 | 87 | 61 | 74.0 | 4.7 | 0 | 9 | 0.00 | 0.0 | 0 |
| 2022-07-23 | 87 | 64 | 75.5 | 6.2 | 0 | 11 | 0.00 | 0.0 | 0 |
| 2022-07-24 | 86 | 66 | 76.0 | 6.7 | 0 | 11 | 1.97 | 0.0 | 0 |
| 2022-07-25 | 80 | 55 | 67.5 | -1.8 | 0 | 3 | 0.02 | 0.0 | 0 |
| 2022-07-26 | 74 | 52 | 63.0 | -6.3 | 2 | 0 | 0.00 | 0.0 | 0 |
| 2022-07-27 | 78 | 54 | 66.0 | -3.2 | 0 | 1 | T | 0.0 | 0 |
| 2022-07-28 | 81 | 61 | 71.0 | 1.8 | 0 | 6 | 0.05 | 0.0 | 0 |
| 2022-07-29 | 79 | 54 | 66.5 | -2.6 | 0 | 2 | 0.01 | 0.0 | 0 |
| 2022-07-30 | 77 | 51 | 64.0 | -5.1 | 1 | 0 | 0.00 | 0.0 | 0 |
| 2022-07-31 | 81 | 51 | 66.0 | -3.0 | 0 | 1 | 0.00 | 0.0 | 0 |
| Sum | 2342 | 1708 | - | - | 13 | 134 | 4.10 | 0.0 | - |
| Average | 80.8 | 56.9 | 69.0 | 0.2 | - | - | - | - | 0.0 |
| Normal | 80.8 | 56.7 | 68.8 | - | 28 | 144 | M | M | - |

**Observations for each day cover the 24 hours ending
at the time given below (Local Standard Time).
Observation times may have changed during this period.**
Snowfall : unknown

Firefox                                                                                              https://nowdata.rcc-acis.org/dtx/

### Climatological Data for OIL CITY 2S, MI - August 2022

| Date | Temperature | | | | HDD | CDD | Precipitation | New Snow | Snow Depth |
|------|---------|---------|---------|-----------|-----|-----|---------------|----------|------------|
| | Maximum | Minimum | Average | Departure | | | | | |
| 2022-08-01 | 82 | 60 | 71.0 | 2.0 | 0 | 6 | 0.00 | 0.0 | 0 |
| 2022-08-02 | 82 | 57 | 69.5 | 0.6 | 0 | 5 | 0.16 | 0.0 | 0 |
| 2022-08-03 | 77 | 56 | 66.5 | -2.3 | 0 | 2 | 0.00 | 0.0 | 0 |
| 2022-08-04 | M | M | M | M | M | M | 1.10 | 0.0 | 0 |
| 2022-08-05 | M | M | M | M | M | M | 0.00 | 0.0 | 0 |
| 2022-08-06 | M | M | M | M | M | M | 0.00 | 0.0 | 0 |
| 2022-08-07 | M | M | M | M | M | M | 0.00 | 0.0 | 0 |
| 2022-08-08 | 85 | 72 | 78.5 | 10.3 | 0 | 14 | 0.14 | 0.0 | 0 |
| 2022-08-09 | 78 | 52 | 65.0 | -3.1 | 0 | 0 | T | 0.0 | 0 |
| 2022-08-10 | 76 | 54 | 65.0 | -3.0 | 0 | 0 | 0.00 | 0.0 | 0 |
| 2022-08-11 | 82 | 52 | 67.0 | -0.8 | 0 | 2 | 0.00 | 0.0 | 0 |
| 2022-08-12 | M | M | M | M | M | M | S | 0.0 | 0 |
| 2022-08-13 | M | M | M | M | M | M | M | 0.0 | 0 |
| 2022-08-14 | M | M | M | M | M | M | M | 0.0 | 0 |
| 2022-08-15 | M | M | M | M | M | M | 0.05A | 0.0 | 0 |
| 2022-08-16 | M | 48 | M | M | M | M | 0.00 | 0.0 | 0 |
| 2022-08-17 | 80 | 51 | 65.5 | -1.4 | 0 | 1 | 0.12 | 0.0 | 0 |
| 2022-08-18 | 81 | 53 | 67.0 | 0.3 | 0 | 2 | 0.00 | 0.0 | 0 |
| 2022-08-19 | 82 | 52 | 67.0 | 0.5 | 0 | 2 | 0.00 | 0.0 | 0 |
| 2022-08-20 | 81 | 55 | 68.0 | 1.7 | 0 | 3 | 0.00 | 0.0 | 0 |
| 2022-08-21 | 79 | 62 | 70.5 | 4.4 | 0 | 6 | 1.25 | 0.0 | 0 |
| 2022-08-22 | 79 | 59 | 69.0 | 3.1 | 0 | 4 | 0.08 | 0.0 | 0 |
| 2022-08-23 | 80 | 52 | 66.0 | 0.3 | 0 | 1 | 0.00 | 0.0 | 0 |
| 2022-08-24 | 81 | 52 | 66.5 | 1.0 | 0 | 2 | 0.00 | 0.0 | 0 |
| 2022-08-25 | 84 | 56 | 70.0 | 4.8 | 0 | 5 | 1.02 | 0.0 | 0 |
| 2022-08-26 | 75 | 59 | 67.0 | 2.0 | 0 | 2 | 0.49 | 0.0 | 0 |
| 2022-08-27 | 75 | 50 | 62.5 | -2.3 | 2 | 0 | 0.00 | 0.0 | 0 |
| 2022-08-28 | 77 | 52 | 64.5 | 0.0 | 0 | 0 | 0.00 | 0.0 | 0 |
| 2022-08-29 | 82 | 61 | 71.5 | 7.2 | 0 | 7 | 1.73 | 0.0 | 0 |
| 2022-08-30 | 79 | 64 | 71.5 | 7.5 | 0 | 7 | 0.34 | 0.0 | 0 |
| 2022-08-31 | 76 | 55 | 65.5 | 1.7 | 0 | 1 | 0.00 | 0.0 | 0 |
| Sum | 1753 | 1284 | - | - | 2 | 72 | 6.48 | 0.0 | - |
| Average | 79.7 | 55.8 | 67.9 | 1.1 | - | - | - | - | 0.0 |
| Normal | 79.0 | 54.6 | 66.8 | - | 43 | 99 | M | M | - |

### Observations for each day cover the 24 hours ending at the time given below (Local Standard Time). Observation times may have changed during this period.

| |
|---|
| Max Temperature : 8am |
| Min Temperature : 8am |
| Precipitation : 8am, unknown |
| Snowfall : unknown |
| Snow Depth : 8am |

Firefox                                                                                                    https://nowdata.rcc-acis.org/dtx/

### Climatological Data for OIL CITY 2S, MI - September 2022

| Date | Temperature | | | | HDD | CDD | Precipitation | New Snow | Snow Depth |
|------|---------|---------|---------|-----------|-----|-----|---------------|----------|------------|
|      | Maximum | Minimum | Average | Departure |     |     |               |          |            |
| 2022-09-01 | 79 | 50 | 64.5 | 1.0 | 0 | 0 | 0.00 | 0.0 | 0 |
| 2022-09-02 | 81 | 53 | 67.0 | 3.7 | 0 | 2 | 0.00 | 0.0 | 0 |
| 2022-09-03 | 85 | 60 | 72.5 | 9.5 | 0 | 8 | 0.00 | 0.0 | 0 |
| 2022-09-04 | 83 | 59 | 71.0 | 8.3 | 0 | 6 | 0.09 | 0.0 | 0 |
| 2022-09-05 | 63 | 56 | 59.5 | -2.9 | 5 | 0 | 0.00 | 0.0 | 0 |
| 2022-09-06 | 66 | 59 | 62.5 | 0.4 | 2 | 0 | T | 0.0 | 0 |
| 2022-09-07 | 75 | 48 | 61.5 | -0.3 | 3 | 0 | 0.00 | 0.0 | 0 |
| 2022-09-08 | 75 | 47 | 61.0 | -0.5 | 4 | 0 | 0.00 | 0.0 | 0 |
| 2022-09-09 | 78 | 48 | 63.0 | 1.8 | 2 | 0 | 0.00 | 0.0 | 0 |
| 2022-09-10 | 78 | 51 | 64.5 | 3.6 | 0 | 0 | 0.00 | 0.0 | 0 |
| 2022-09-11 | 81 | 57 | 69.0 | 8.4 | 0 | 4 | 0.00 | 0.0 | 0 |
| 2022-09-12 | 69 | 56 | 62.5 | 2.2 | 2 | 0 | 1.65 | 0.0 | 0 |
| 2022-09-13 | 66 | 48 | 57.0 | -2.9 | 8 | 0 | 0.00 | 0.0 | 0 |
| 2022-09-14 | 70 | 51 | 60.5 | 0.9 | 4 | 0 | 0.00 | 0.0 | 0 |
| 2022-09-15 | 72 | 46 | 59.0 | -0.2 | 6 | 0 | 0.00 | 0.0 | 0 |
| 2022-09-16 | 69 | 47 | 58.0 | -0.9 | 7 | 0 | 0.00 | 0.0 | 0 |
| 2022-09-17 | 78 | 54 | 66.0 | 7.5 | 0 | 1 | 0.00 | 0.0 | 0 |
| 2022-09-18 | 79 | 59 | 69.0 | 10.8 | 0 | 4 | 0.08 | 0.0 | 0 |
| 2022-09-19 | 80 | 60 | 70.0 | 12.2 | 0 | 5 | 0.00 | 0.0 | 0 |
| 2022-09-20 | M | 51 | M | M | M | M | 0.00 | 0.0 | 0 |
| 2022-09-21 | 70 | 52 | 61.0 | 3.9 | 4 | 0 | 0.23 | 0.0 | 0 |
| 2022-09-22 | 77 | 48 | 62.5 | 5.8 | 2 | 0 | 0.13 | 0.0 | 0 |
| 2022-09-23 | 58 | 36 | 47.0 | -9.4 | 18 | 0 | 0.00 | 0.0 | 0 |
| 2022-09-24 | 61 | 34 | 47.5 | -8.5 | 17 | 0 | 0.03 | 0.0 | 0 |
| 2022-09-25 | 55 | 48 | 51.5 | -4.1 | 13 | 0 | 0.05 | 0.0 | 0 |
| 2022-09-26 | 59 | 48 | 53.5 | -1.7 | 11 | 0 | 0.34 | 0.0 | 0 |
| 2022-09-27 | 56 | 46 | 51.0 | -3.8 | 14 | 0 | 0.26 | 0.0 | 0 |
| 2022-09-28 | 52 | 41 | 46.5 | -8.0 | 18 | 0 | 0.29 | 0.0 | 0 |
| 2022-09-29 | 54 | 38 | 46.0 | -8.1 | 19 | 0 | 0.00 | 0.0 | 0 |
| 2022-09-30 | 57 | 32 | 44.5 | -9.2 | 20 | 0 | 0.00 | 0.0 | 0 |
| Sum | 2026 | 1483 | - | - | 179 | 30 | 3.15 | 0.0 | - |
| Average | 69.9 | 49.4 | 59.6 | 0.7 | - | - | - | - | 0.0 |
| Normal | 71.4 | 46.4 | 58.9 | - | 210 | 27 | M | M | - |

| Observations for each day cover the 24 hours ending at the time given below (Local Standard Time). |
|------|
| Max Temperature : 8am |
| Min Temperature : 8am |
| Precipitation : 8am |
| Snowfall : unknown |
| Snow Depth : 8am |

1 of 1                                                                                                    1/21/2025, 4:19 PM

Firefox                                                                                   https://nowdata.rcc-acis.org/dtx/

### Climatological Data for OIL CITY 2S, MI - October 2022

| Date | Temperature | | | | HDD | CDD | Precipitation | New Snow | Snow Depth |
|------|---------|---------|---------|-----------|-----|-----|---------------|----------|------------|
|  | Maximum | Minimum | Average | Departure | | | | | |
| 2022-10-01 | 62 | 35 | 48.5 | -4.8 | 16 | 0 | 0.00 | 0.0 | 0 |
| 2022-10-02 | 67 | 41 | 54.0 | 1.1 | 11 | 0 | 0.00 | 0.0 | 0 |
| 2022-10-03 | 60 | 31 | 45.5 | -7.0 | 19 | 0 | 0.00 | 0.0 | 0 |
| 2022-10-04 | 63 | 32 | 47.5 | -4.6 | 17 | 0 | 0.00 | 0.0 | 0 |
| 2022-10-05 | 68 | 33 | 50.5 | -1.3 | 14 | 0 | 0.00 | 0.0 | 0 |
| 2022-10-06 | 70 | 44 | 57.0 | 5.6 | 8 | 0 | 0.00 | 0.0 | 0 |
| 2022-10-07 | 67 | 39 | 53.0 | 2.0 | 12 | 0 | 0.10 | 0.0 | 0 |
| 2022-10-08 | 50 | 29 | 39.5 | -11.1 | 25 | 0 | 0.00 | 0.0 | 0 |
| 2022-10-09 | 52 | 35 | 43.5 | -6.7 | 21 | 0 | 0.00 | 0.0 | 0 |
| 2022-10-10 | 61 | 31 | 46.0 | -3.9 | 19 | 0 | 0.00 | 0.0 | 0 |
| 2022-10-11 | 60 | 30 | 45.0 | -4.5 | 20 | 0 | 0.00 | 0.0 | 0 |
| 2022-10-12 | 73 | 31 | 52.0 | 2.9 | 13 | 0 | 0.59 | 0.0 | 0 |
| 2022-10-13 | 67 | 42 | 54.5 | 5.8 | 10 | 0 | 0.34 | 0.0 | 0 |
| 2022-10-14 | 51 | 37 | 44.0 | -4.4 | 21 | 0 | 0.10 | 0.0 | 0 |
| 2022-10-15 | 51 | 38 | 44.5 | -3.5 | 20 | 0 | 0.11 | 0.0 | 0 |
| 2022-10-16 | 49 | 37 | 43.0 | -4.7 | 22 | 0 | 0.00 | 0.0 | 0 |
| 2022-10-17 | 53 | 35 | 44.0 | -3.3 | 21 | 0 | 0.04 | 0.0 | 0 |
| 2022-10-18 | 46 | 33 | 39.5 | -7.4 | 25 | 0 | 0.19 | T | 0 |
| 2022-10-19 | 41 | 37 | 39.0 | -7.6 | 26 | 0 | 0.17 | 0.0 | 0 |
| 2022-10-20 | 44 | 35 | 39.5 | -6.7 | 25 | 0 | 0.01 | 0.0 | 0 |
| 2022-10-21 | 47 | 27 | 37.0 | -8.9 | 28 | 0 | T | 0.0 | 0 |
| 2022-10-22 | 67 | 28 | 47.5 | 2.0 | 17 | 0 | 0.00 | 0.0 | 0 |
| 2022-10-23 | 75 | 43 | 59.0 | 13.8 | 6 | 0 | 0.00 | 0.0 | 0 |
| 2022-10-24 | 75 | 48 | 61.5 | 16.6 | 3 | 0 | 0.03 | 0.0 | 0 |
| 2022-10-25 | 76 | 50 | 63.0 | 18.5 | 2 | 0 | 0.00 | 0.0 | 0 |
| 2022-10-26 | 69 | 44 | 56.5 | 12.3 | 8 | 0 | 0.92 | 0.0 | 0 |
| 2022-10-27 | 46 | 28 | 37.0 | -6.8 | 28 | 0 | 0.09 | 0.0 | 0 |
| 2022-10-28 | 51 | 27 | 39.0 | -4.5 | 26 | 0 | 0.00 | 0.0 | 0 |
| 2022-10-29 | 57 | 26 | 41.5 | -1.7 | 23 | 0 | 0.00 | 0.0 | 0 |
| 2022-10-30 | 62 | 27 | 44.5 | 1.7 | 20 | 0 | 0.00 | 0.0 | 0 |
| 2022-10-31 | 62 | 34 | 48.0 | 5.5 | 17 | 0 | 0.02 | 0.0 | 0 |
| Sum | 1842 | 1087 | - | | 543 | 0 | 2.71 | T | - |
| Average | 59.4 | 35.1 | 47.2 | -0.6 | - | - | - | - | 0.0 |
| Normal | 58.8 | 36.7 | 47.8 | - | 538 | 3 | M | M | - |

### Observations for each day cover the 24 hours ending at the time given below (Local Standard Time).

| Max Temperature : 8am |
|---|
| Min Temperature : 8am |
| Precipitation : 8am |
| Snowfall : unknown |
| Snow Depth : 8am |

**Climatological Data for OIL CITY 2S, MI - November 2022**

| Date | Temperature | | | | HDD | CDD | Precipitation | New Snow | Snow Depth |
|------|---------|---------|---------|-----------|-----|-----|---------------|----------|------------|
| | Maximum | Minimum | Average | Departure | | | | | |
| 2022-11-01 | 61 | 36 | 48.5 | 6.3 | 16 | 0 | 0.00 | 0.0 | 0 |
| 2022-11-02 | 65 | 31 | 48.0 | 6.2 | 17 | 0 | 0.00 | 0.0 | 0 |
| 2022-11-03 | 67 | 31 | 49.0 | 7.5 | 16 | 0 | 0.00 | 0.0 | 0 |
| 2022-11-04 | 72 | 38 | 55.0 | 13.8 | 10 | 0 | 0.00 | 0.0 | 0 |
| 2022-11-05 | 68 | 55 | 61.5 | 20.7 | 3 | 0 | 0.18 | 0.0 | 0 |
| 2022-11-06 | 67 | 40 | 53.5 | 13.0 | 11 | 0 | 0.10 | 0.0 | 0 |
| 2022-11-07 | 63 | 41 | 52.0 | 11.8 | 13 | 0 | 0.00 | 0.0 | 0 |
| 2022-11-08 | 50 | 27 | 38.5 | -1.3 | 26 | 0 | 0.00 | 0.0 | 0 |
| 2022-11-09 | 50 | 27 | 38.5 | -1.0 | 26 | 0 | 0.00 | 0.0 | 0 |
| 2022-11-10 | 59 | 29 | 44.0 | 4.9 | 21 | 0 | 0.00 | 0.0 | 0 |
| 2022-11-11 | 76 | 43 | 59.5 | 20.7 | 5 | 0 | 0.00 | 0.0 | 0 |
| 2022-11-12 | 58 | 30 | 44.0 | 5.6 | 21 | 0 | 0.00 | 0.0 | 0 |
| 2022-11-13 | 40 | 30 | 35.0 | -3.1 | 30 | 0 | T | T | 0 |
| 2022-11-14 | 36 | 19 | 27.5 | -10.2 | 37 | 0 | T | T | 0 |
| 2022-11-15 | 38 | 23 | 30.5 | -6.9 | 34 | 0 | 0.00 | 0.0 | 0 |
| 2022-11-16 | 33 | 29 | 31.0 | -6.0 | 34 | 0 | 0.50 | 4.5 | 5 |
| 2022-11-17 | 37 | 20 | 28.5 | -8.2 | 36 | 0 | 0.11 | 1.2 | 3 |
| 2022-11-18 | 33 | 24 | 28.5 | -7.8 | 36 | 0 | 0.09 | 1.0 | 4 |
| 2022-11-19 | 30 | 19 | 24.5 | -11.5 | 40 | 0 | 0.01 | 0.3 | 3 |
| 2022-11-20 | 25 | 13 | 19.0 | -16.6 | 46 | 0 | 0.02 | 0.4 | 3 |
| 2022-11-21 | 28 | 16 | 22.0 | -13.2 | 43 | 0 | T | T | 3 |
| 2022-11-22 | 41 | 20 | 30.5 | -4.4 | 34 | 0 | 0.00 | 0.0 | 1 |
| 2022-11-23 | 40 | 20 | 30.0 | -4.5 | 35 | 0 | 0.00 | 0.0 | 1 |
| 2022-11-24 | 47 | 19 | 33.0 | -1.1 | 32 | 0 | 0.00 | 0.0 | T |
| 2022-11-25 | 52 | 27 | 39.5 | 5.7 | 25 | 0 | 0.05 | 0.0 | 0 |
| 2022-11-26 | M | 28 | M | M | M | M | 0.00 | 0.0 | 0 |
| 2022-11-27 | 56 | 33 | 44.5 | 11.5 | 20 | 0 | 0.07 | 0.0 | 0 |
| 2022-11-28 | 42 | 32 | 37.0 | 4.4 | 28 | 0 | 0.19 | 0.0 | 0 |
| 2022-11-29 | 40 | 27 | 33.5 | 1.2 | 31 | 0 | 0.00 | 0.0 | 0 |
| 2022-11-30 | 52 | 30 | 41.0 | 9.1 | 24 | 0 | 0.13 | 0.0 | 0 |
| Sum | 1426 | 857 | - | - | 750 | 0 | 1.45 | 7.4 | - |
| Average | 49.2 | 28.6 | 38.9 | 1.7 | - | - | - | - | 0.8 |
| Normal | 46.1 | 28.2 | 37.2 | - | 836 | 0 | M | M | - |

| Observations for each day cover the 24 hours ending at the time given below (Local Standard Time). |
|---|
| Max Temperature : 8am |
| Min Temperature : 8am |
| Precipitation : 8am |
| Snowfall : unknown |
| Snow Depth : 8am |